THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DWIGHT L. THOMAS, a/k/a Randolph Kimble, Defendant-Appellant.

Fifth District   No. 75-298

Opinion filed April 4, 1977.

Bruce Stratton and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

The defendant, Dwight L. Thomas, was convicted of burglary following a jury trial. A sentence of 20 months to five years was imposed, and the defendant appealed.

Defendant raises three issues on appeal: (1) whether defendant's statutory right to be tried within 120 days of being taken into custody on the burglary charge was violated; (2) whether the police officers had probable cause to arrest defendant; (3) whether defendant was proven guilty beyond a reasonable doubt.

■■ ■ On November 21, 1974, defendant was arrested for the burglary of Cobin's Salvage Yard in Dowell, Illinois. On February 24, 1975, defendant filed a "Motion to Remove Cause from the Docket." Defendant's trial was reset for April 21, 1975. We note that there is no provision for such a motion in the list of pretrial motions. (Ill. Rev. Stat. 1973, ch. 38, par. 114.) The trial court correctly treated defendant's motion as a motion for continuance pursuant to section 114—4(b) of the Code of Criminal Procedure. (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(b).) Therefore, defendant's motion caused the delay in bringing him to trial and the statutory period was tolled. (*People v. Wilson,* 19 Ill. App. 3d 466, 311 N.E.2d 759.) Defendant also filed a motion for substitution of judges

on February 7, 1975, which was a delay attributable to him and started the 120-day period to run anew. *People v. Bacon*, 2 Ill. App. 3d 324, 276 N.E.2d 782.

■■ The burglary of the Cobin Salvage Yard occurred between the hours of 4:30 p.m. and 9 p.m. on November 20, 1974. Defendant was arrested for that offense at approximately 12:30 a.m. on November 21, 1974. Subsequently defendant filed a motion to quash the arrest. The burden of proving the invalidity of an arrest is on the defendant. (*People v. Turner*, 35 Ill. App. 3d 550, 342 N.E.2d 158.) The test of whether a warrantless arrest by a police officer is proper is whether a reasonable and prudent man, having knowledge which the police officer had, would believe that a crime had been committed and that the person arrested was guilty of the offense. (*People v. Colbert*, 10 Ill. App. 3d 758, 295 N.E.2d 225.) An examination of the instant case requires that we examine precisely what knowledge was in the possession of the arresting officers in order to determine if defendant has met his burden.

The arresting officers knew that a burglary had been committed at the Cobin Salvage Yard during the early evening hours of November 20, 1974. No one witnessed the burglary. A shoeprint with the name "Florsheim" had been found at the scene of the crime, and there was reason to believe that the shoeprint had been left by the burglar. Mrs. Sudano and Mr. Bader, who lived in the rural area approximately one-half mile from the salvage yard, had given the police a description of an individual who had stopped at their house and had asked for a ride into town in order to obtain assistance for his malfunctioning automobile. The citizens did not see an unfamiliar automobile in the area. Mr. Bader did transport defendant to Jackie's Tavern which was located across the street from the salvage yard. When the police entered the tavern, they determined that defendant matched the description which had been given them by the citizens. Defendant's shoes were muddy and his clothes contained vegetation. Defendant produced an identification which stated that he was Randolph Kimble and was 5'9" tall. Defendant's height is 6' tall. Defendant was then arrested for the Cobin Salvage Yard burglary.

■■ The police officers had the authority to demand that defendant give his name, address, and an explanation of his activities. (Ill. Rev. Stat. 1973, ch. 38, par. 107—14.) The discrepancies in the identification and defendant's actual physical description was justification for the police to inquire into defendant's identification. Within two hours defendant produced other identification which identified him as Dwight Thomas. It was determined that neither Kimble nor Thomas was wanted in any jurisdiction. However, there was no probable cause to arrest defendant for the Cobin Salvage Yard burglary. There was no attempt to compare defendant's shoes with the shoeprint found at the scene of the burglary at

the time of the arrest. No such comparison was made until 12 hours after the arrest. Defendant was at no time placed within one-half mile of the salvage yard until he was driven to Jackie's Tavern. Therefore, it is clear that there was no probable cause to arrest defendant for the Cobin Salvage Yard burglary. Subsequent discovery of evidence does not relate back to the time of arrest and operate as a justification for an arrest as occurred when the shoeprint and defendant's shoes were compared 12 hours after the arrest. *People v. Harshbarger*, 24 Ill. App. 3d 335, 321 N.E.2d 138.

We also find that defendant was not proven guilty beyond a reasonable doubt. There was evidence introduced by the State at trial which was intended to link defendant with the crime, but utterly failed to do so. Mr. Cobin testified that when he went to the salvage yard and discovered the burglary, he saw a new car parked in the driveway. This car was never linked with defendant. Residue from debris from the salvage yard made the shoeprint in the burglarized premises. There is no evidence to link the "residue from debris" with the mud found on defendant's clothes. The vegetation found on defendant's clothes was not connected with vegetation, if any, found in the salvage yard. One officer testified that the man they were looking for had run through a field. There was no evidence as to the description of this person, as to who saw him, as to the time this occurred, or as to which direction he was seen running. The unstated assumption is that this person seen running through the field was defendant as he was going toward Mrs. Sudano's and Mr. Bader's house after committing the burglary. However, there was no evidence of the foregoing. There was no evidence at trial which placed defendant within a half mile of the crime scene until after the burglary.

An Illinois Bureau of Investigation criminalist testified that defendant's left shoe probably produced the shoeprint at the crime scene. The criminalist testified that:

> "Based on the similar class characteristics and some individual characteristics, it is my opinion that the left shoe of [defendant's] which was submitted to Lab, produced probably, probably produced one shoeprint on one of the sheets of paper."

This opinion was based on the word "Florsheim", two intersecting lines, and two pit marks. The width of the shoe was also compared with the width of the print. However, the criminalist testified that "there were insufficient individual characteristics for a positive identification to be made." Compare the foregoing evidence with the evidence in *State v. Pinyatello*, (1968), 272 N.C. 312, 158 S.E.2d 596.

■■ The prosecution correctly states the rule that the determination of the credibility of witnesses and the weight to be given their testimony is committed to the jury. However, after due consideration, we are of the

opinion that defendant's guilt has not been established beyond a reasonable doubt, and it is our duty to reverse. *People v. Anderson*, 30 Ill. 2d 413, 197 N.E.2d 24. This record leaves such a doubt and the conviction is reversed.

The judgment of the Circuit Court of Jackson County is reversed.

Reversed.

JONES and EBERSPACHER, JJ., concur.