872

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM GREENE, Defendant-Appellant.

Second District    No. 76-28

Opinion filed July 22, 1977.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's
Office, of Elgin, for appellant.

John Maville, State's Attorney, of Belvidere (Phyllis J. Perko, of Illinois State's
Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant, William Lindsey Greene, in a jury trial, was found
guilty of theft of property of a value over $150 and was sentenced to 2-6
years in the penitentiary. He appeals.

In this appeal two issues are presented: the first being whether the State
failed to prove the defendant guilty of theft beyond a reasonable doubt,
and the second, whether the value of the property stolen was properly
established by the State.

At approximately 4 o'clock in the morning of May 13, 1975, an
employee of the Grey Iron Foundry in Belvidere heard noises in the
salvage yard adjacent to the foundry, walked over to the fence and saw
two men loading objects into a red and white pickup truck. The
employee then called the police. Two police officers of the city of
Belvidere drove to the scene and, as they arrived, they observed the
pickup truck leaving the driveway of the junk or scrap iron yard. The
police officers followed the truck at a fast rate of speed. It turned a corner
and the officers found the truck parked with the occupants gone. They
checked the registration of the truck and found it to be registered in the

name of Larry Hobson and, in examining the truck, they found a billfold on the dashboard belonging to William Lindsey Greene containing his driver's license and also the stolen material. Other police were alerted and the defendant, William Greene, was apprehended at 5:42 a.m. walking west on Route 20 just past the Dixie Creme Doughnut shop. Larry Hobson was apprehended on Business Route 20 by officers from Boone County, prior to the apprehension of the defendant herein. Both Greene and Hobson, at the time of their apprehension, were wearing very dirty clothes.

Defendant testified in his own behalf that he had, in fact, been with Larry Hobson and that they had gone to McHenry where he had repaired the transmission of a car owned by one "Bud" who had moved to Alabama or Arkansas; that he ended up in a tavern in Marengo; and that he did not remember what happened after that. He further testified that Larry Hobson, who is his son-in-law, had asked him in the tavern to "rip off some stuff and make some easy money," that Hobson left the tavern and he went looking for him. He further testified that his driver's license had been suspended in March and that he had not been carrying his wallet since then. He stated he had left it in Hobson's truck for sometime prior to the night of the theft. In explanation of two receipts for room rent found in his wallet issued to "William Lindsey," he testified that he had, in fact, rented the room in McHenry for the period in question but that the landlord had merely written his first and middle name on the receipt. The State at this time attempted to impeach the defendant who had testified that he had not used the wallet since March of 1975. Greene testified that he had in fact placed them in the wallet, presumably for safe keeping.

■■ There is no question but that the defendant was with Larry Hobson on the night in question and that the pickup truck of Larry Hobson was used in the theft of the grates and plumbing fixtures from the Silver Salvage Yard on the night in question. While it is true that the defendant was not identified at the scene or in the abandoned vehicle, he has placed himself in that vehicle earlier in the evening and his explanation that he did not wish to accompany Larry Hobson in the theft in question was not believed by the jury. We will not substitute our judgment for that of the jury in determining the credibility of this witness under the facts of this case. Not only was he apprehended in the vicinity, his attire would indicate that he had been engaged in handling material that soiled both his clothing and hands and his explanation of why he was hitchhiking back to Rockford at 5:42 in the morning when he was apprehended was tenuous at best. The circumstantial evidence is of the highest order in this case and the jury, as trier of the facts, was fully justified in not believing the defendant and in finding him guilty of the offense of theft.

The defendant has cited *People v. Thomas* (1977), 47 Ill. App. 3d 402, 362 N.E.2d 7, also involving theft from a salvage yard. The appellate court found the defendant was not proven guilty beyond a reasonable doubt. Unlike the case before us, the court found that there was no evidence linking the defendant there with the theft. In the instant case we have the defendant in the vehicle, his wallet found in the vehicle, the vehicle being seen as it left the site of the theft, the flight from the scene and the abandonment of the vehicle by the two men involved and within a short period the two men were arrested on the highway, one of whom owned the vehicle in question and the other whose property was in the vehicle. In addition to that, the defendant further testified that he was in the vehicle on the night in question but that he does not remember what happened after he got to Marengo.

■■ Defendant next contends that the value of the stolen property was established by hearsay evidence. We do not agree. The owner of the salvage yard in question testified that he owned three salvage yards in Belvidere. One was located at 800 E. Pleasant Street, one at 300 S. Main Street and the third, from which the material was taken, was located at 100 S. Main Street. Silver testified that he was in the business of buying and selling scrap material, that he was familiar with the material located in the salvage yard and that he identified the material found in Hobson's truck. The material consisted of plumbing fixtures and cast iron grates which Silver recognized as actually coming from the 100 S. Main salvage yard. He further testified that the scrap value of the property taken was well over $300, that he had bought the plumbing fixtures from a plumber and that they were new. While there is some confusion as to the exact weight of the material found in the truck used by the defendant, the testimony of Mr. Silver was conclusive that the property, in his opinion, was worth more than $300. In *People v. Tassone* (1968), 41 Ill. 2d 7, 241 N.E.2d 419, no evidence was adduced as to the value of the truck stolen. Defendant contended that the State had failed to prove the value of the truck was more than $150. The supreme court, in rejecting this contention took judicial notice that the value was in excess of $150 and stated:

> "Courts do not operate in a vacuum; they are presumed to be no more ignorant than the public generally, and will take judicial notice of that which everyone knows to be true." (41 Ill. 2d 7, 12, 241 N.E.2d 419, 422.)

We have more than that in the case before us in that the owner of three salvage yards, engaged in the business of buying and selling scrap metal, recognized the material as being taken from his salvage yard and stated that the value was over $300. In effect the owner was an expert witness. In addition to that, the testimony of the witness was that the material in

the pickup truck weighted it down to where the fenders were almost on the wheels. Further, the plumbing fixtures were not scrap material but were new and had been bought by Silver for resale. In *People v. Cobetto* (1977), 66 Ill. 488, 363 N.E.2d 854, the defendant therein was found guilty of receiving stolen property exceeding $150 in value. The appellate court held that the People had failed to prove the fair cash market value of the property exceeded $150. The supreme court, in reversing, noted that the highway commissioner testified that he knew the total value of the tools on the date they were stolen. He estimated their value at $213. He further testified that the value would be at least $150. The second owner of property which had been taken testified as to the approximate value of the property taken. In holding that the testimony was sufficient to establish the value as being in excess of $150, the supreme court stated:

> "We consider that the evidence here was sufficient to support the conviction for felony. We consider that to hold otherwise under the circumstances of this case would be sheer formalism." (66 Ill. 488, 491, 363 N.E.2d 854, 856.)

The supreme court went on to quote with approval the dissenting Justice of the appellate court who had stated,

> "To say that the value of the property involved * * * does not exceed $150 requires that one abandon common sense in favor of stringent technicality." (66 Ill. 488, 491, 363 N.E.2d 854, 856.)

In this case, while there may be some confusion as to the actual weight of the material taken, the owner certainly knew from his expertise in the salvage business as to the value thereof as being in excess of $300. The judgment of the trial court is affirmed.

Affirmed.

RECHENMACHER, P. J., and WOODWARD, J., concur.