No. 1-15-1300WC
Opinion filed:  November 10, 2016

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| FLEXIBLE STAFFING SERVICES, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14-MR-0631 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION and FREDERICK WILLIAMS, | ) | Honorable |
| | ) | Carl Anthony Walker, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the opinion of the court.
Presiding Justice Holdridge and Justices Hoffman, Harris, and Stewart concurred in the opinion.

**OPINION**

¶ 1                                    I. INTRODUCTION

¶ 2     Respondent, Flexible Staffing Services, appeals a decision of the Illinois Workers' Compensation Commission (Commission) awarding benefits to claimant, Frederick Williams, in accordance with the provisions of the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2010)).  Respondent contends that the Commission applied the incorrect legal standard in assessing claimant's claim and that, in any event, its decision is contrary to the manifest weight of the evidence.  We disagree and affirm.

¶ 3                                     II. BACKGROUND

¶ 4     It is undisputed that claimant sustained a work-related injury on October 7, 2011, while in respondent's employ. Claimant was welding a section of rail, similar to a train track. The rail fell from a sawhorse, and claimant attempted to grab it. The rail weighed over 400 pounds. He felt immediate sharp pain in his right arm, and he heard something snap. Claimant reported the accident and sought medical care. He was diagnosed with a distal biceps tendon rupture.

¶ 5     On October 12, 2011, claimant, who was 45 years old at the time, sought treatment from Dr. Arabindi, an orthopedic surgeon. On November 7, 2011, Arabindi performed an outpatient repair of claimant's right elbow. Claimant underwent physical therapy from November 28, 2011, to February 8, 2012. Claimant saw Arabindi for a final time on March 7, 2012. On that date, claimant complained of numbness and diminished strength. Arabindi found that claimant's range of motion in his right forearm was limited by 5 to 10 degrees. Nevertheless, Arabindi released claimant to full duty. When he attempted to return to full duty, respondent informed claimant that it no longer had work for him.

¶ 6     Dr. Mark Levin examined claimant on respondent's behalf. Levin documented claimant's complaints of continuing pain and impaired range of motion as well as claimant's continued use of Norco. Levin found claimant "cooperative." According to Levin, claimant lacked three degrees range of motion in his right elbow. Levin noted "decreased pinprick sensation over the ulnar aspect of the right elbow." Levin opined that the surgery claimant underwent was appropriate and that claimant is now at maximum medical improvement. Using the "AMA Guides to Evaluation of Permanent Impairment," Levin calculated that claimant had a 6% upper-extremity impairment and a 4% disability rating of the person as a whole.

¶ 7    Claimant testified that he had been employed as a welder-fabricator at the time of his accident. He considered his job to be physically demanding. He is right-hand dominant. He served in the Marine Corps for four years and received an honorable discharge. Following his surgery, claimant felt that he was progressing well in physical therapy, though he still experienced pain and lacked full range of motion. He expressed this to Aribindi during their last visit. Aribindi told claimant that his arm was "as good as it is going to get." While he had progressed in physical therapy, claimant's range of motion never fully recovered, which was significant because welding required him to hold his arm in various positions. When Aribindi released claimant to full duty, claimant told him that he did not feel he could perform his job. Claimant testified that he had worked other jobs prior to becoming a welder; however, they were all "physically demanding."

¶ 8    The day after he received the release to full duty, claimant testified, he attempted to return to work for respondent. His former supervisor told him that they did not have a position for him. Since his release to full duty, claimant's arm and fingertips continue to tingle. He is numb in the area where surgery was performed, and he continues to experience pain. He takes Norco three times per week. He experiences pain on a daily basis. He has welding equipment in his garage and tries to use it, but he finds it difficult. The pain and sensations he still experiences have not changed since he last saw Aribindi.

¶ 9    The arbitrator, applying the factors set forth in section 8.1b of the Act (820 ILCS 305/8.1b (West 2010)), determined that claimant had suffered 30% loss of use of his right arm. The Commission modified the award, finding claimant lost 25% of the use of his right arm. It did not articulate its reasoning. The trial court, on administrative review, remanded the case and directed the Commission to articulate the facts and reasoning upon which it relied in coming to

its decision. On remand, the Commission first noted that Levin placed claimant's level of "impairment" at 6%. It noted respondent's argument that this rating should have been given more weight, but it felt that to do so would effectively discount the other factors set forth in section 8.1b. This section states:

"Determination of permanent partial disability. For accidental injuries that occur on or after September 1, 2011, permanent partial disability shall be established using the following criteria:

(a) A physician licensed to practice medicine in all of its branches preparing a permanent partial disability impairment report shall report the level of impairment in writing. The report shall include an evaluation of medically defined and professionally appropriate measurements of impairment that include, but are not limited to: loss of range of motion; loss of strength; measured atrophy of tissue mass consistent with the injury; and any other measurements that establish the nature and extent of the impairment. The most current edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment" shall be used by the physician in determining the level of impairment.

(b) In determining the level of permanent partial disability, the Commission shall base its determination on the following factors: (i) the reported level of impairment pursuant to subsection (a); (ii) the occupation of the injured employee; (iii) the age of the employee at the time of the injury; (iv) the employee's future earning capacity; and (v) evidence of disability corroborated by the treating medical records. No single enumerated factor shall be the sole determinant of disability. In determining the level of disability, the relevance and

weight of any factors used in addition to the level of impairment as reported by the physician must be explained in a written order." 820 ILCS 305/8.1b (West 2010).

The Commission stated that to give added weight to Levin's opinion would "be to disregard the other factors and give them no weight at all." The Commission noted that Section 8.1b(b) expressly states, "No single enumerated factor shall be the sole determinant of disability." It further noted that " 'impairment' in relation to the A.M.A. rating is not synonymous with the term 'disability' as it relates to the ultimate permanent partial disability award." The Commission then discussed the other four factors set forth in the statute.

¶ 10    As for the second factor—claimant's occupation—the Commission credited claimant's testimony that the position of welder-fabricator was a " 'physically demanding job.' " It found that a person with heavier job duties would suffer a greater degree of disability than someone with a light-duty job relative to Levin's impairment rating.

¶ 11    Regarding claimant's age—the third factor—the Commission found that claimant was 45 years old at the time of the hearing. Therefore, the Commission reasoned, claimant would "live longer with his disability than someone who is older." It found that this warranted an increase in the level of disability.

¶ 12    Factor four is a claimant's future earning capacity. Here, the Commission first noted that after claimant was released to full duty, respondent refused to employ him. It credited claimant's testimony that he has been unsuccessfully looking for a job as a welder. Finally, it observed that when claimant attempts to use welding equipment that he owns, he has difficulty doing so. It concluded that claimant suffered a loss in future earning capacity and that claimant is "more prone to future injury associated with loss of income."

¶ 13 The fifth factor is "evidence of disability corroborated by the treating medical records." 820 ILCS 320/8.1b (West 2010). Regarding this factor, the Commission noted that claimant's medical records corroborate that he is right-hand dominant. His testimony (given during the arbitration hearing on June 5, 2012) that his pain level remains at 4 to 5 on a scale of 10 finds support in his final physical therapy record dated February 29, 2012. Moreover, Aribindi's records indicate that claimant was still experiencing pain on March 7, 2012, when claimant was discharged from Aribindi's care. Further, claimant's testimony regarding not having a full range of motion and the resulting difficulties he has welding (at home) are corroborated by Aribindi's records indicating claimant "lacked full supination of the right forearm." Similarly, Levin's records document a limited range of motion. Claimant's testimony that he experienced numbness is corroborated by Levin's finding that claimant "had decreased pinprick sensation over the ulnar aspect of the right elbow."

¶ 14 The Commission concluded:

> "Based on the above, the Commission finds that the 6% impairment rating by Dr. Levin does not adequately represent [claimant's] actual disability in this case. When considering the other factors, we find that [claimant's] permanent partial disability is 25% loss of use of the right arm."

It modified the arbitrator's decision accordingly. Respondent appealed to the trial court, which confirmed. Respondent now appeals to this court.

¶ 15                                III. ANALYSIS

¶ 16 On appeal, respondent raises two main issues. First, respondent contends that the Commission misapplied section 8.1b of the Act (820 ILCS 305/8.1b (West 2010)) as a matter of law. Second, it argues that the Commission's application of that section was erroneous as a

matter of fact, *i.e.*, contrary to the manifest weight of the evidence. We disagree with both contentions.

¶ 17                          A. Misapplication as a Matter of Law

¶ 18    Respondent first contends that the Commission did not apply section 8.1b properly as a matter of law. Section 8.1b sets forth a list of factors for the Commission to consider in assessing permanent partial disability: "(i) the reported level of impairment pursuant to subsection (a); (ii) the occupation of the injured employee; (iii) the age of the employee at the time of the injury; (iv) the employee's future earning capacity; and (v) evidence of disability corroborated by the treating medical records." 820 ILCS 305/8.1b(b) (West 2010). According to respondent, any given factor should be considered only if there is evidence in the record regarding that factor. It cites section 1.1(e) of the Act (820 ILCS 305/1.1(e) (West 2010)), which states, "Decisions of an arbitrator or a Commissioner shall be based exclusively on evidence in the record of the proceeding and material that has been officially noticed." Respondent further points out that section 8.1b later states that "the relevance and weight of *any factors used* in addition to the level of impairment as reported by the physician must be explained in a written order." (Emphasis added.) 820 ILCS 305/8.1b(b) (West 2010). That the statute refers to "any factors used" indicates that not all factors must be used in assessing permanent partial disability. We have no quarrel with any of these propositions advanced by respondent.

¶ 19    Respondent goes on to argue that the Commission misapplied section 8.1b as a matter of law because it considered factors for which no evidence was present in the record   For example, it contends that the Commission considered claimant's age as a factor weighing in favor of a greater degree of disability despite there being no evidence of record regarding the impact of claimant's age on his disability. Similarly, according to respondent, the Commission found that

claimant's "upper extremity impairment makes him more prone to future injury with an associated loss of income" despite a purported lack of evidence on the issue.

¶ 20    Assuming, *arguendo*, that respondent is correct that no evidence exists in the record on such matters, respondent has not identified an error of law. A finding entered without sufficient evidentiary support is against the manifest weight of the evidence. See *Wabash County v. Illinois Municipal Retirement Fund*, 408 Ill. App. 3d 924, 934-35 (2011); *Johnson v. Industrial Comm'n*, 89 Ill. 2d 438, 443 (1982) (holding Commission's decision was contrary to the manifest weight of the evidence where "there simply was not evidence to show that her work activities caused her physical problem."); *Martino v. Levatino*, 99 Ill. App. 3d 907, 911 (1981). Respondent attempts to frame this issue as the Commission misunderstanding the statute and believing that it could make findings on the factors set forth in section 8.1b "regardless of whether there was evidence in the record showing that the factor had an impact on Williams' level of partial disability." As we read the Commission's decision, it believed it had evidence before it on all of the factors it considered. Thus, what respondent purports to have identified is actually findings by the Commission that allegedly do not find support in the record. This raises a factual question—namely, whether the Commission's decision is contrary to the manifest weight of the evidence, which brings us to respondent's second argument.

¶ 21                      B. Manifest Weight of the Evidence

¶ 22    On September 1, 2011, section 8.1b was added to the Act. In that statute, the legislature set forth a process for evaluating claims of permanent partial disability. *Continental Tire of the Americas, LLC v. Illinois Workers' Compensation Comm'n*, 2015 IL App (5th) 1440445WC, ¶ 10. As noted above, that section sets forth five factors to consider: "(i) the reported level of impairment pursuant to subsection (a); (ii) the occupation of the injured employee; (iii) the age

of the employee at the time of the injury; (iv) the employee's future earning capacity; and (v) evidence of disability corroborated by the treating medical records." 820 ILCS 305/8.1b(b) (West 2010). It further provides that "no single enumerated factor shall be the sole determinant of disability." *Id.* Further, the legislature did not state that these factors are exclusive, so the Commission remains free to evaluate other relevant considerations. See *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184-85 (2009) ("We may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express."). As explained in the background section of this opinion, the Commission made detailed findings regarding each factor. As this is a factual matter, we will assess respondent's arguments using the manifest-weight standard and reverse only if an opposite conclusion is clearly apparent. *Teska v. Industrial Comm'n*, 266 Ill. App. 3d 740, 741-42 (1994).

¶ 23    Regarding the second factor, respondent argues that "[t]here was no evidence to support consideration of [the second factor,] the occupation of the injured employee." It contends that the only basis for finding that claimant's job was physically demanding was his testimony. It adds, "[Claimant] only testified in generalities as to his duties at work," and "[h]e did not provide the detailed evidence for the Commission to reach its conclusion."

¶ 24    Nevertheless, claimant did testify that he felt his job was physically demanding. Respondent cites nothing that would indicate that the Commission could not consider and give weight to claimant's evaluation of the demands of his job. Furthermore, claimant testified that he is right-hand dominant and described his physical impairment. He testified that welding requires him to hold his arm in various positions and that his injury has diminished his range of motion. Additionally, claimant finds it difficult to use the welding equipment he has in his

garage. Thus, contrary to respondent's claims, there was evidence in the record from which the Commission could draw inferences about claimant's disability as it relates to his occupation.

¶ 25    Respondent cites *Caterpillar Tractor Co. v. Industrial Comm'n*, 98 Ill. 2d 400, 405-06 (1983), in support of its position. That case is readily distinguishable. There, the Commission found that no evidence supported the claimant's assertion that his repetitive trauma injury to his left-wrist was caused by his employment. *Id*. It noted that the claimant's theory was that the injury was caused by driving; however, the claimant testified that he drove primarily with his right hand. *Id*. While a doctor testified as to a causal relationship, the doctor stated that the injury was caused by lifting 50 pounds repeatedly with his left arm. *Id*. The Commission pointed out that there was no evidence as to whether or how often the claimant lifted this amount. *Id*.

¶ 26    In *Caterpillar Tractor Co.*, there was no evidence that the claimant used his left arm to drive, here, it is undisputed that claimant suffered an injury to the arm at issue here. In that case, a doctor opined as to causation without knowing details of claimant's employment relevant to the subject. Here, the opinion that claimant's work was physically demanding came from claimant himself, and it cannot seriously be disputed that claimant knew what his own job entailed. Finally, we note that in *Caterpillar Tractor Co.*, 98 Ill. 2d at 407, the supreme court was affirming the Commission. Hence, that case stands for the proposition that where the Commission rejects a claim in the absence of certain evidence, the Commission's decision is not contrary to the manifest weight of the evidence. It does not mean that the presence of such evidence is the *sine qua non* of a successful claim. Here, the Commission had evidence of claimant's disability relating to his occupation before it, and we cannot say that an opposite conclusion is clearly apparent.

¶ 27    As for the third factor, respondent contends that there was no evidence to show a relationship between claimant's age and his level of disability.  Respondent contends that "[t]he finding that [claimant] will have to live with [his disability] longer is an assumption that is not based on any evidence in the record of his life expectancy."  That a younger person will probably live longer than an older person is hardly a controversial proposition.  The Commission is not required to abandon common sense in rendering its decision.  *See People v. Greene*, 50 Ill. App. 3d 872, 875 (1977).

¶ 28    Respondent also contends that there was no evidence to support the Commission's findings regarding claimant's future earning capacity (the fourth factor).  It is true, as respondent points out, that Aribindi released claimant to full duty.  However, it is also true that at the time claimant was so released, he protested, indicating that he did not feel he could perform his job.  It is undisputed that respondent refused to reemploy claimant.  Moreover, claimant testified that he had difficulty using the welding equipment that he personally owns.  Claimant also testified that other positions he had held in the past involved physically demanding jobs.  From this evidence, the Commission could draw inferences about claimant's future earning capacity, so it cannot be said that the Commission's decision finds no evidentiary support in the record.

¶ 29    Respondent takes particular issue with the Commission's finding that claimant's "future earning capacity has been diminished and his upper extremity impairment makes him more prone to future injury with an associated loss of income."  Respondent contends that "there was no evidence in the record that [claimant] was more prone to future injury."  It is unclear here whether the Commission was speaking of a future physical injury or a future economic injury, though the latter seems more likely to us given that this factor concerns future *earning* capacity.  It does not strike us as an unreasonable inference that, given the nature of claimant's condition,

he will become less employable as his physical skills diminish as he ages. His injury-related physical limitations will likely become more significant as his other physical attributes diminish with age. Thus, it is inferable that claimant is more prone to economic injury following his accident. Moreover, it is worth remembering that the Commission is an administrative body, possessing unique skill and expertise in the areas of medical and workers' compensation issues. See *Presson v. Industrial Comm'n*, 200 Ill. App. 3d 876, 881 (1990) ("Because of the Industrial Commission's expertise in the area of workers; compensation, its finding on the question of the nature and extent of permanent disability should be given substantial deference."); *Long v. Industrial Comm'n*, 76 Ill. 2d 561, 566 ("Therefore, a finding of fact by the Commission on this issue, based on any medical testimony or on inferences to be drawn from medical testimony, should be given substantial deference because of the expertise acquired by the Commission in this area."). We therefore owe it substantial deference on this issue. *Id*.

¶ 30    The fifth factor concerns "evidence of disability corroborated by the treating medical records." 820 ILCS 305/8.1b(b) (West 2010). Respondent identifies particular portions of claimant's testimony and asserts that there is no corroboration for them and that, in turn, the Commission was not entitled to rely upon them. For example, respondent states that nothing in his medical records corroborates that claimant was still taking Norco at the time of the arbitration hearing. Black's Law Dictionary defines "corroborate" as "[t]o strengthen or confirm; to make more certain." Black's Law Dictionary 348 (7th ed. 1999). Of course, the plain language of a statute is the most reliable indicator of its meaning. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 15. Moreover, we are to interpret the Act liberally to effectuate its primary purpose of providing financial protection to workers. *Cassens Transport Co. v. Industrial Comm'n*, 218 Ill. 2d 519, 514 (2006). Hence, we will not take "corroborate" to mean that there

must be a point-by-point coincidence between the nonmedical evidence relied upon and the accompanying medical record. Rather, so long as the medical record tends to confirm, strengthen, or make the nonmedical evidence more certain, it provides sufficient corroboration such that the nonmedical evidence may be considered under the fifth factor. *Cf. People v. Cloutier*, 156 Ill. 2d 483, 503 (1993) (holding that evidence is sufficient to corroborate a confession and establish the *corpus delecti* of a crime where it tends "to confirm a defendant's confession."). Indeed, a strict construction of "corroborate" would allow the consideration of nonmedical evidence only when it was cumulative of evidence in the medical records.

¶ 31    Thus, the Commission properly found that claimant's testimony that his pain level remains at 4 to 5 on a scale of 10 is corroborated by his final physical therapy record dated February 29, 2012. That claimant was still experiencing pain on March 7, 2012, as corroborated by Aribindi's records, makes it more certain that claimant experienced pain subsequently. Since Aribindi provided no further care after that date, the Commission could infer that claimant's condition—his pain—remained the same thereafter, which also corroborates claimant's testimony that he was taking a pain killer. The same is true of Aribindi documenting claimant's limited range of motion in his right forearm. In other words, since claimant was experiencing problems at the time Aribindi ceased care, it is inferable that there was nothing more that could be done for these issues and that they continued on past March 7, 2012. This provides corroboration for much of claimant's testimony concerning his medical condition. The documented impairment of his range of motion also corroborates claimant's testimony regarding the difficulties he had trying to weld (which also could be considered under the second factor without corroboration).

¶ 32    Thus, none of respondent's contentions regarding the Commission's findings lacking evidentiary support are well founded.    In turn, we reject respondent's argument that the Commission erred in determining the level of disability as it purportedly could only rely upon the first and, to an extent, the fifth factors.    Quite simply, we owe the Commission considerable deference on such medical questions.    *Long*, 76 Ill. 2d at 566.    It is not within our purview to rebalance the five factors set forth in section 8.1b(b) and substitute our judgment for that of the Commission.    *DiVittorio v. Industrial Comm'n*, 299 Ill. App. 3d 662, 671 (1998).    Furthermore, we also cannot say that the Commission's decision is contrary to the manifest weight of the evidence.

¶ 33                                IV. CONCLUSION

¶ 34    In light of the foregoing, the judgment of the circuit court of Cook County confirming the decision of the Commission is affirmed.

¶ 35    Affirmed.