2020 IL App (1st) 190529-U

FOURTH DIVISION
February 20, 2020

No. 1-19-0529

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DANA BOND, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CH 05303 |
| | ) | |
| KEVIN RADKE, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the judgment of the circuit court of Cook County determining the ownership of real property and addressing related financial matters.

¶ 2    While Kevin Radke (Kevin) and Dana Bond (Dana) were engaged in a long-distance relationship, Kevin purchased a condominium in Burr Ridge, Illinois (the condo), where Dana then resided with their child.  Although Kevin obtained the financing and was the sole owner listed on the deed, Dana paid for remodeling work and for a substantial portion of the mortgage, homeowners association (HOA) dues, and other condo expenses during a two-year period.  She subsequently filed a complaint against Kevin in the circuit court of Cook County seeking a

declaration of her ownership of the condo and other relief; Kevin filed a counter-complaint for forcible entry and detainer and sought use and occupancy payments. Following a bench trial, the trial court found that Kevin was the owner and granted Dana an equitable lien for certain improvements she made to the condo. Dana contends on appeal that the trial court erred in finding that Kevin was the owner of the condo and rejecting her claim for unjust enrichment. For the reasons discussed below, we affirm.

¶ 3                                                     BACKGROUND

¶ 4      In March 2014, Dana began searching for an apartment for her and the parties' son.[1] She originally looked for properties to rent because she was unable to obtain financing on her own to purchase a property. After Dana did not find any suitable rentals, Kevin suggested that she look for a property to buy. Dana testified at trial that they agreed Kevin would obtain the financing and she would pay the mortgage, HOA dues, and utilities. During this period, Kevin was working in a sales position in New York; his employer did not operate retail stores in Illinois.

¶ 5      Kevin obtained financing for most of the $140,000 purchase price for the condo and was present with Dana at the May 2014 closing. Kevin then returned to New York, and Dana began remodeling the condo at a cost of $11,527.14. She paid approximately $1100 per month for the mortgage, HOA dues, and other condo-related expenses. After the parties' relationship ended in October 2014, she continued to reside in the condo and pay such amounts. Dana also testified that she incurred approximately $4000 in maintenance and repair costs relating to the condo.

¶ 6      Dana claimed that Kevin failed or refused to make child support payments in amounts adequate to support their son. He allegedly paid $400 in 2013, $4850 in 2014, $7388 in 2015, and $3210 in 2016. Dana asserted that these amounts were less than required under Illinois law

---

[1] Certain facts set forth herein were included in the agreed statement of facts filed by the parties; the record does not contain transcripts of any proceedings. See Ill. S. Ct. R. 323(d) (eff. July 1, 2017).

based on his annual income (*e.g.*, income of $57,000 in 2014 and $72,000 in 2016). According to Dana, Kevin ceased making child support payments after April 2016. By June 2016, Dana was heavily in debt and stopped paying the mortgage and other condo-related expenses. The record reflects that proceedings were initiated in the domestic relations division of the circuit court of Cook County regarding, among other things, Kevin's child support obligations.

¶ 7 Dana then filed the instant action against Kevin in the chancery division seeking a declaration and deed reflecting her equitable ownership of the condo and an injunction preventing Kevin from taking any action inconsistent with her ownership. In the alternative, she sought a judgment in excess of $40,000 and an equitable lien against the condo.

¶ 8 Kevin moved for dismissal of the complaint pursuant to (a) section 2-615 of the Code of Civil Procedure, arguing that the complaint did not plead facts to support Dana's claim of equitable ownership and (b) section 2-619(a)(7), contending that any alleged oral agreement as to the condo purchase would be barred by the Statute of Frauds (735 ILCS 5/2-615, 2-619(a)(7) (West 2016)). Kevin also served a 30-day notice to quit on Dana, notifying her that her month-to-month lease was being terminated. In a counter-complaint for forcible entry and detainer, he asserted that he owned the condo and that Dana was wrongfully withholding possession.

¶ 9 With leave of court, Dana filed an amended complaint for equitable and injunctive relief. In count I, she alleged that she and Kevin shared a fiduciary relationship, and she sought the imposition of a constructive trust over the condo in her favor. In count II, she asserted that if Kevin was found to be the owner of the condo, he was unjustly enriched by her payment of the mortgage, HOA dues, taxes, insurance, improvements, and repairs in excess of $40,000. In count III, she requested an equitable lien for such amounts if Kevin was found to be the owner. In count IV, she sought to quiet title through a declaration that she owned the condo in fee

simple. Kevin filed a counter-complaint for forcible entry and detainer; he also sought an order granting him access to the condo and compelling Dana to make use and occupancy payments.

¶ 10    During a bench trial in November 2018, the parties testified regarding, among other things, their respective financial contributions. Dana also testified that she possessed both sets of keys for the condo, and after she loaned them to Kevin or others, the keys were returned to her. Kevin did not possess his own keys while Dana resided in the condo. Dana further testified that when Kevin stayed in the condo during visits, it was with her consent and permission.

¶ 11    On November 27, 2018, the trial court entered an order finding that Kevin was the owner and was entitled to possession; the court granted Dana an equitable lien against the condo in the amount of her remodeling project expenditures, $11,527.14. The trial court declined to rule on their respective requests for monetary relief based on "mortgage payments, use and occupancy, etc.," finding that, based on the evidence and testimony presented, such amounts were "inextricably related" to Kevin's child support payments, which were the subject of separate litigation. The trial court opined that "leav[ing] the matter" to the other court may avoid inconsistent rulings and result in a more expeditious resolution.

¶ 12    In her amended motion to reconsider the judgment, Dana argued that the trial court erred in its finding that Kevin owned the condo. She also contended that the amount of the equitable lien should have included all payments she made with respect to the condo, including the mortgage and HOA dues, in an aggregate amount greater than $40,000. She further asserted that the court should enter a money judgment on her unjust enrichment claim for the same amount as the equitable lien claim. The trial court denied her motion, and Dana timely filed this appeal.

¶ 13                              ANALYSIS

¶ 14    Dana advances two primary arguments on appeal. First, she contends that the trial court

erred when it found that Kevin was the owner of the condo. Second, she argues that the trial court improperly rejected her unjust enrichment claim. For the reasons discussed below, we reject Dana's contentions.

¶ 15    As a preliminary matter, we observe that Kevin's brief on appeal fails to respond to certain arguments raised in Dana's brief and instead focuses on two topics: the law of constructive trusts and the question of whether Kevin "gifted" the condo to Dana. Although Dana sought the imposition of a constructive trust in her amended complaint, she has represented that she did not pursue such relief at trial. While the "gift" concept was briefly mentioned in the trial court's judgment, such concept is inconsistent with Dana's claim of ownership, *i.e.*, Kevin could not "gift" property which he did not own.

¶ 16    We recognize that when an appellee does not address arguments in his brief, his position should be equivalent to that as if he had not filed a brief at all. *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1088 (1995). However, "[w]hen the record is simple, and the claimed errors are such that this court can easily decide them on the merits without the aid of an appellee's brief, this court should decide the appeal on the merits." *Id.* Accord *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 88 (finding "even if [the appellee] had not responded at all, we could still address the merits of [the appellant's] argument"). Based on the claimed errors and the record herein, we can decide this appeal on the merits.

¶ 17    Dana acknowledges that the standard of review in a bench trial generally is whether the judgment is against the manifest weight of the evidence. *E.g.*, *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 12. A ruling is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the ruling itself is arbitrary, unreasonable, or not based on the evidence

presented. *Crest Hill Land Development, LLC v. Conrad*, 2019 IL App (3d) 180213, ¶ 34. Dana asserts, however, that since the issue in this appeal is whether the trial court applied the correct legal standard, the standard of review is *de novo*. See *Reliable Fire Equipment*, 2011 IL 111871, ¶ 13. We disagree. As discussed below, we reject her contention that the trial court "failed to acknowledge and apply controlling precedent" when determining the ownership of the condo. Rather, we find that the resolution of this appeal requires an evaluation of the evidence as it is applied to the law of real property ownership, *i.e.*, a factual determination which calls for review under the manifest weight of the evidence standard. *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 15.

¶ 18    The cases cited by Dana suggest that, under limited circumstances, title to property is not necessarily indicative of property ownership. In *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479 (1979), the state sought to impose personal liability for unpaid real estate taxes on land held in land trusts. Our supreme court held that the "owners" of the real estate for this specific purpose were the beneficiaries of the land trusts, not the trustees. *Id.* at 494. While the trustees on the land trusts technically held title, the beneficiaries controlled the purchase, sale, rental, management, and other aspects of land ownership, and the trustees could act only on the beneficiaries' written direction. *Id.* at 493. The court in *In re Marriage of Marriott*, 264 Ill. App. 3d 23, 32 (1994), held that the husband – who was the sole beneficiary of a land trust – was the "owner" of the residence held in the trust for purposes of property distribution in a divorce proceeding. In *In re Ulz*, 388 B.R. 865, 867 (Bankr. N.D. Ill. 2008), a chapter 7 bankruptcy trustee sued the debtor's wife and daughter, alleging that while title to certain property had been placed in their names, the debtor was the *de facto* owner because he owned, managed, operated and controlled the property. In denying the defendants' motion to dismiss, the bankruptcy court

noted that, under Illinois law, "[a] person may have an interest in property – and may even be considered the owner – although someone else has title." *Id.* at 868.

¶ 19    According to Dana, the trial court failed to acknowledge and apply these cases regarding the elements of real property ownership. We find this contention to be inaccurate. In its written order, the trial court expressly acknowledged *In re Ulz*, but noted that *Ulz* and the other cases cited by Dana did not support her assertion that title "deserves little, if any, weight when deciding ownership." The trial court acknowledged that the cases on which Dana relied indicate that "some aspects of ownership are independent of title."

¶ 20    As noted above, Dana's position is not merely that the name on a title is not dispositive of property ownership, but rather that title is effectively meaningless when determining ownership. Citing *City of Chicago v. Elm State Property LLC*, 2016 IL App (1st) 152552, ¶ 24, Dana argues that "the name on a title or mortgage is essentially irrelevant when deciding who owns real property." We reject her interpretation of *Elm State Property*. In that case, the appellate court found that the assignment of a mortgage was not an assignment of a "[b]eneficial interest in real property" and thus was not subject to a municipal transfer tax. *Id.* ¶¶ 23, 35. The *Elm State Property* court neither explicitly stated nor implicitly suggested that the name on a title or mortgage was "essentially irrelevant" when deciding ownership of property. See, *e.g.*, *City of Virginia v. Mitchell*, 2013 IL App (4th) 120629, ¶ 35 (finding that a deed was evidence of ownership of real property).

¶ 21    In any event, the trial court's determination that Kevin owned the condo was not exclusively based on his name on the title. Although the trial court correctly observed that it was "undisputed" that Kevin purchased the condo and was the only party listed on its title, that was not the sole underpinning of the court's determination, as is suggested by Dana. Rather, the trial

court then discussed the testimony and evidence presented at trial regarding, among other things: the frequency of Kevin's visits, including visits without Dana present; Kevin's participation in discussions regarding condo improvements; the fact that Kevin did not have a key but was regularly given one during his routine visits until 2016; the parties' payment of "roughly similar amounts" toward the mortgage and HOA dues at the time of the trial in November 2018; the parties' text messages; and Kevin's eventual move to Ohio in 2015 and his subsequent return to Illinois. Based on the foregoing, the trial court concluded that the evidence did not support Dana's claim of equitable ownership. We reject Dana's argument that the court's determination of ownership was solely or primarily based on Kevin's name on the condo title.

¶ 22 We are compelled to address one specific argument advanced by Dana. Dana claims that Kevin "admitted" that she was the owner of the condo and that the trial court "cavalierly dismissed" this purported admission. In support of this contention, Dana quotes a text message sent to her by Kevin as follows: "It's not MY Condo. I didn't buy it for me . . . If [the Property] was for me I wouldn't have bought it. I would've walked at the closing and killed the sale." The sentence which was omitted by Dana (as reflected by the ellipses) is: "I bought it for u and E[2] for now and eventually us." We view this omitted sentence as relevant to the meaning of the text message, and we are concerned regarding its repeated exclusion in documents filed in the trial court and this court. See, *e.g.*, *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 35 (criticizing a party's use of "strategically placed ellipses" when describing the facts and holding of a case); David L. Lee, *Red Flags*, CBA Rec. 46 (Jan. 9, 1995) (characterizing ellipses are "red flags that something may have been altered or that something is being kept from" the court's attention). Furthermore, we share the trial court's assessment that the context of the text messages suggest that Kevin did not buy the condo "*solely* for himself, but

---

[2] "E" is the first initial of the parties' son's first name.

to provide for those he (at the time) considered his family." (Emphasis in original.)

¶ 23      Under the manifest weight standard, we give deference to the trial court as the finder of fact because the trial court is in a better position than the reviewing court to observe the demeanor and conduct of the parties. *Crest Hill Land Development*, 2019 IL App (3d) 180213, ¶ 34. We will not substitute our judgment for that of the trial court as to the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn from the evidence. *Id.* Based on the foregoing, we find that the trial court's determination regarding Kevin's ownership of the condo was not against the manifest weight of the evidence.

¶ 24      Dana next argues that the trial court erred when it "rejected" her unjust enrichment claim. She contends that she is entitled to a monetary judgment as to any awarded amounts. She also asserts that "it makes no sense, from a legal or factual perspective, that the trial court awarded an equitable lien for the improvement payments, but not payments for the mortgage, condominium dues, and repairs." As discussed below, we reject these contentions.

¶ 25      The circuit court granted Dana an equitable lien as to the $11,527.14 she expended for the remodeling work on the condo. In her opening brief, she acknowledges that this amount was paid out of the proceeds of the sale of the condo in August 2019, and the lien has been released. Thus, there are no remaining issues on appeal as to the $11,527.14 equitable lien. *E.g.*, *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) (noting that "[a]s a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided"); *In re Jonathan P.*, 399 Ill. App. 3d 396, 400 (2010) (providing that an appeal is deemed moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effective relief).

¶ 26    Dana argues that the trial court should have also awarded her the amount of $28,938.10, representing $4000 in repair expenses, and $17,892.10 in mortgage payments and $7046 in HOA dues from June 2014 until July 2016.  Although not expressly referenced in the trial court's order, it appears that by solely ruling as to the $11,527.14 in remodeling expenses, the court rejected her claim as to the $4000.  While Dana contends that the amounts she allegedly spent in repairs are comparable to the $11,527.14 she expended on the remodeling project, we observe at least one critical distinction: the record does not include receipts in support of the $4000 claim. We note that Dana testified and submitted photographs as to the purported repairs; however, we will not substitute our judgment for that of the trial court regarding witness credibility, the weight to be given to evidence, or the inferences to be drawn therefrom.  *Crest Hill Land Development*, 2019 IL App (3d) 180213, ¶ 34.  To the extent that the trial court rejected Dana's claim for alleged repairs, such determination was not against the manifest weight of the evidence.

¶ 27    As to the $24,938.10 in mortgage payments and HOA dues ($17,892.10 + $7046), Dana contends that these payments increased the value of the condo, as did the remodeling project. We recognize – as did the trial court – that the remodeling project (on which Dana spent $11,527.14) increased the value of Kevin's condo.  Conversely, while her mortgage payments may have increased the *equity* in the condo (*e.g.*, *Rizzo v. Rizzo*, 95 Ill. App. 3d 636, 650 (1981)), the effect of such payments on its *value* is questionable.  The fact that the property sold for an amount in excess of the $140,000 purchase price does not necessarily evidence a causal connection between Dana's payments and the increase in value.  We further note that, as the sole obligor on the mortgage debt, Kevin bore the risk of a potential decrease in the condo's value. While Dana contends that Kevin would retain an unjust benefit if he were permitted to retain the

value of her mortgage payments and other condo-related payments, the relief requested by Dana could effectively result in her having lived for years in the condo rent-free.

¶ 28    In any event, the trial court did not outright reject her claim regarding her payments of the mortgage and HOA dues.  According to Kevin, the trial court "expressly left the issue of reimbursement for mortgage payments, condominium dues and insurance to a different court hearing the parties' child support issues."  Dana contends that "the trial court said no such thing." For clarity purposes, we set forth the relevant paragraph of the trial order:

> "Finally, the court declines to rule on the parties' respective pleas for monetary relief based on mortgage payments, use and occupancy, etc.  It was readily apparent from the evidence and testimony that such payments were inextricably related to what the parties considered to be child support payments from [Kevin]: for example, in certain months [Kevin] did not pay any child support, but did pay the mortgage and [c]ondo dues, suggesting he considered all living expenses and child support to be interchangeable.  The total amount of child support he owes is the subject of other pending litigation, and the court will leave the matter to that court in the interest of avoiding inconsistent rulings and a probably more expeditious resolution thereof."

In her reply brief, by quoting only the final sentence of the foregoing, Dana arguably misstates the court's ruling as to this issue.  *E.g.*, *Burke*, 2016 IL App (2d) 150462, ¶ 36 (rejecting a party's characterization of a judicial decision "despite the fact that the quoted words exist in the case").  Furthermore, in her description of the amounts at issue in the case, she focuses solely on *her* claims for the mortgage payments and related expenditures, but seemingly disregards Kevin's request for use and occupancy payments.  The trial court herein indicated that it was

- 11 -

deferring to the other court as to both parties' "*respective* pleas for monetary relief" (emphasis added).

¶ 29    We are untroubled by the trial court's decision to leave the parties' requests for monetary relief up to another court handling the child support matters.  As we agree with the trial court's assessment of the evidence – *i.e.*, that the evidence suggested that the parties' condo-related expenditures were linked to the child support payments – we view the trial court's deference to its fellow court as a sound decision in the interest of judicial economy.  See, *e.g.*, *Flexible Staffing Services v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 151300WC, ¶ 27 (noting that "[t]he commission is not required to abandon common sense in rendering its decision"); *Crawford County Oil, LLC v. Weger*, 2014 IL App (5th) 130382, ¶¶ 11, 19 (addressing a particular issue "in the interests of judicial economy and the need to reach an equitable result"); *In re Marriage of Bennett*, 225 Ill. App. 3d 828, 833 (1992) (same).

¶ 30                                    CONCLUSION

¶ 31    For the reasons stated herein, the judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 32    Affirmed.